ANANIAS HONEYCUTT v. THE STATE.

1. CRIMINAL LAW. *Change of venue. Affidavit for upon grounds of undue excitement.* Where a prisoner offers his own affidavit for change of venue upon the grounds of undue excitement against him, etc., if it appears from the record that the excitement was manifested at the time of the arrest, and was confined to the immediate friends of the deceased, and there being no satisfactory evidence that it was existing at the trial term so as to prejudice the defendant, it will not be error to refuse the change of venue under such circumstances.

Code cited: Sec. 5195.

2. SAME. *Charge of court as to commuting punishment, etc.* It is not error

under the facts of this case for the court to neglect to charge that the jury have the power to commute the death penalty, for murder in the first degree, to imprisonment for life, etc., when not requested to do so. Code cited: Sec. 5257.

3. SAME. *Confessions. Admissibility of.* Such fear of the ultimate consequences of his crime, as perhaps every criminal feels when arrested and confronted with his accusers, will not render a confession inadmissible. The prisoner was arrested for murder, and brought over one hundred miles to the neighborhood where deceased had lived, and was being handcuffed at a blacksmith shop where a number of the relatives and friends of the deceased gathered about, and some excitement was manifested; a brother-in-law of deceased wanted to take off the prisoner's shirt, which he said was bought with deceased's money, and a son of deceased used some abusive language to the prisoner, but no attempt at violence was offered, the officers having him in charge assuring him that he should be protected. After he was handcuffed he was taken to a house three hundred yards away, where he made a partial confession; and afterward, on his way to Tazewell, when every thing was quiet, no threats were being made and not a word had been spoken for half an hour, he made a full confession to his guards. *Held,* that such a confession made under the facts of this case is admissible as evidence, and testimony to the effect that the prisoner told another person that his confessions so made afterwad were all false and made through fear, cannot be admitted in evidence, and will not alter the case.

Cases cited: Wilson *v.* The State, 3 Heis., 244–5.

4. SAME. *Omission of court to give a full charge upon self-defense under an indictment for murder.* Under the facts of this case, and the verdict being for murder in the first degree, it is clearly shown that an omission of a full charge upon the question of self-defense, worked no injury to the defendant, and is therefore not a reversible error.

Cases cited: Williams *v.* The State, 3 Heis., 379, and the case of Ray *v.* The State, there cited.

---

FROM CLAIBORNE.

---

Appeal from the Circuit Court.    J. H. RANDOLPH, Judge.

No counsel marked for plaintiff.

ATTORNEY-GENERAL FULKERSON for the State.

DEADERICK, J., delivered the opinion of the court.

At the May term, 1874, of the Circuit Court of Claiborne county, the plaintiff in error was indicted for the murder of Thomas Ausmes, and the cause was continued upon his affidavit, upon the ground of "undue excitement against him." At the next September term the defendant made application for a change of venue to Hancock county upon his own affidavit, but the court refused to change the venue, but continued the cause to the next term.

At the January term, 1875, the defendant again made application for a change of venue to Hancock county, which was supported by his affidavit stating that he could not have a fair and impartial trial in Claiborne county because of the prejudice and excitement existing against him in said county.

The court again refused to change the venue, and the defendant was put upon his trial and convicted of murder in the first degree and sentenced to be hanged.

From this judgment he has appealed in error to this court, and has, by his counsel, presented several grounds upon which he insists upon a reversal of the judgment.

By sec. 5195 of the Code, it is provided, that when it is made satisfactorily to appear to the court that from undue excitement against the prisoner, or other cause, a fair trial could not probably be had, the venue may be changed.

The affidavit of the prisoner was all the evidence presented of the excitement, and the court refused to

make the order. It is insisted that the evidence of excitement against the prisoner at the time of his arrest, a year before the trial, was developed in the progress of the trial, shows a state of facts existing at the time of the trial, entitling the prisoner to a change of venue. This excitement, so far as the record discloses, was manifested at the time of the arrest, and was confined to the relatives and immediate friends of the deceased, and affords no satisfactory evidence that it was existing at the trial term, so as to prejudice the defendant. We cannot therefore see that the circuit judge did not properly exercise his discretion in refusing to grant the change. It is urged that inasmuch as the statute gives the jury the power of recommending commuting of the death penalty for murder in the first degree to imprisonment for life in the penitentiary (Code, sec. 5257), that the jury should have been told by the judge, in his charge to them, that they had such power. The court is not bound by such recommendation when made, but may disregard it. And while it is proper that the court should instruct the jury fully upon all questions of law involved in the case, we do not think his omission to give the instruction indicated, when not requested to do so, is reversible error under the facts of this case.

The prisoner was arrested about a week after the killing one hundred miles distant from the place of the homicide. When told that he was arrested for the murder of Ausmes, he remained silent for a while, and seemed agitated. He then stated what

he did was in self-defense; that they had got into a difficulty about a hog, and that he had hit Ausmes three times with a rock, but did not kill him, and left him with Greenlee, and that after he left he saw Greenlee hiding something, and that he could go within thirty yards of the place where the thing was hidden. This story he repeated up to the time when he was taken back to Claiborne county, although it is proved Greenlee was not with him and deceased.      He was then taken to a blacksmith shop and handcuffed, and while there a number of the relatives and neighbors of deceased congregated, and some excitement was manifested.      A brother-in-law of deceased wanted to take off the prisoner's shirt, which, he said, was bought with Ausmes' money, and a son of deceased used some abusive language to him, but no attempt at violence was offered, the officer having him in charge assuring him he should be protected.

After he was handcuffed, he was taken to what is called in the record the "leather house" of Ausmes, and Jason Russell testified that he asked him how long he had been planning to kill Ausmes, and he replied that the notion struck him about fifteen minutes before he killed him.      Other persons were present most of the time who testified they did not hear the prisoner make this confession.      After the officer and guard had started to Tazewell with the prisoner, and within two miles of the town, and nothing having been said for a considerable distance, or for about half an hour, he voluntarily commenced a conversation, in which he stated that he killed Ausmes, and being

asked if he was mad at him, or did he expect to get money, he replied that he killed him for his money, and expected to get a good deal.

It is objected that all this testimony as to confessions made after the prisoner was handcuffed was improperly admitted, because made under the influence of fear and demonstrations of violence at the time he was being handcuffed. No confessions were made at the blacksmith shop where the prisoner was handcuffed, and at which place a number of men were gathered. It appears that the distance of the "leather house" from the blacksmith shop was about three hundred yards. How many of the men at the shop followed the prisoner to the "leather house" does not appear, nor how long, after leaving the shop, it was before the confession testified to by Russell was made. No threats of violence, however, were uttered against the prisoner. He was alarmed, doubtless, in view of his situation in the midst of the friends of the deceased, but when one proposed to take his shirt off because bought with Ausmes' money, as he alleged, and another used some abusive language to the prisoner, they were both promptly rebuked by the officer or guard having him in charge, and immediately quelled down.

In the case of *Wilson* v. *The State,* 3 Heis., 244–5, the prisoner was in the employment of the prosecutor, and, in his absence, stole some articles from him and fled. The prosecutor pursued him with a gun, and overtook him in the road, drew his gun upon and ordered him to halt. The prosecutor's brother immediately came

up and was also armed, and told his brother he ought to have shot the prisoner. But the prisoner was told he should not be harmed, and soon after confessed the theft, and it was held that the confession was properly admitted in evidence against him.

It is essential to the admissibility of a confession as evidence, that it should be voluntarily made—not forced from the prisoner "by the influence of hope or fear applied by a third person to the prisoner's mind." 1 Gr. Ev., sec. 219.

Such fear of the ultimate consequences of his crime, as perhaps every criminal feels when arrested and confronted with his accuser, will not render a confession inadmissible. It must be forced from him by promise and hope that his confession will better his condition, or by the threat on fear that it will be worse for him if he does not confess, to make it inadmissible as evidence. If freely and voluntarily made it is presumed to flow from a strong sense of guilt, and is admissible. If extorted by the appliances of others, through the influence of hope or fear, the confession should be rejected by the court, and not be permitted to go to the jury at all.

No promises of benefit, nor threats of injury, were made at the time of the confessions by the prisoner, nor do we think the remarks about taking the shirt off the prisoner, and the language of abuse used at the blacksmith shop, which were not persisted in after the rebuke of the officer, can fairly be construed as extorting from the prisoner the confession made at the "leather house," and the other and subsequent

confessions made on the way to Tazewell. In this last named confession the prisoner stated that he struck Ausmes in the back of the head with a rock and knocked him down, and then struck him with other rocks, and had killed him for his money. Wounds upon the deceased corresponding with those described by the prisoner were found; the bloody rocks were also found upon the ground, near the body, with which the blows were probably inflicted. The deceased's pocket book was found by him hidden under the leaves near the body at the place described by the prisoner. No appearance of any scuffle was presented, although the ground was wet and soft, and, in the language of the witnesses, the leaves about and around the body were undisturbed. The deceased had undoubtedly been felled by the first blow stricken from behind, upon the back of the head, and dispatched by other blows inflicted in front upon the head. The deceased was found lying dead upon his back, his head sunken in the soft ground. The scene of the homicide was in a hollow, two miles from the public road, and about one-half a mile from any house. The prisoner came the day before the homicide to the house of deceased, and after some private talk, in which it was ascertained an appointment for a meeting between them was made, the prisoner left. Early the next morning the deceased left his home and met the prisoner. From the road to the hollow in which the killing was done, the two were tracked, and the prisoner fled the country the same evening.

It is further insisted as error that the charge of the court upon self-defense was incomplete and erroneous.

After correctly charging the jury as to murder in the first and in the second degree, the court defines correctly the two kinds of manslaughter, with illustrations, 'and then says that "the proof taken altogether must show that the defendant was in danger of life or great bodily harm, and such danger must be shown to have been present and imminent before defendant would be justified in taking the life of the deceased."

Admitting that the charge is incomplete as to self-defense, in not stating that if defendant had reasonable grounds to believe himself in great danger, etc., yet we are of opinion that there is no evidence in the record showing the existence of any reasonable grounds of apprehension. At one time the prisoner says he killed defendant in self-defense, but when he stated this he gave none of the facts attending the killing so as to enable the jury to pass upon that aspect of the case. In answer to this assumption, the court charged the jury that if the prisoner killed Ausmes in self-defense he should be acquitted, and gave instructions, too, upon every aspect of the case, of their duty to acquit if they entertained a reasonable doubt of the prisoner's guilt.

The only confession which detailed the circumstances and manner of the killing, makes it a clear case of murder in the first degree.

There are, then, no facts proved which required a

charge upon self-defense—none upon which that defense could be founded.

And in the case of *Williams* v. *The State,* 3 Heis., 379, and the case of *Ray* v. *The State,* there cited, it was held that it was not error not to charge upon questions not raised by the evidence.

The verdict being for murder in the first degree clearly shows that the omission of a full charge upon self-defense worked no injury to defendant.

Upon application for a new trial the defendant produced his affidavit and Chadwick's, defendant's witness, who was unexpectedly absent when called, showing that after he was put in jail he had told the friends of deceased that his confessions were made through fear of them, and were false, but that being then beyond their reach, he was no longer in fear, and retracted all said confessions.

We do not see upon what principle evidence of such declarations by the prisoner could be admitted in his behalf.

If the witness, Chadwick, had been present and offered to prove these facts, on objection thereto the evidence should have been rejected.

We are therefore of opinion that there is no error in the record for which a new trial should be granted, and the judgment will be affirmed.